**MATAGORDA COUNTY HOSPITAL DISTRICT, Appellant,**

v.

**Christine BURWELL, Appellee.**

**No. 13–00–00271–CV.**

Court of Appeals of Texas, Corpus Christi–Edinburg.

Aug. 29, 2002.

Opinion Denying Rehearing Dec. 19, 2002.

Mark A. Keene, Davis & Davis, Austin, for appellant.

Lynn J. Klement, Angleton, for appellee.

Before Justices DORSEY, HINOJOSA, and CASTILLO.

## OPINION

Opinion by Justice HINOJOSA.

Appellant, Matagorda County Hospital District ("MCHD"), appeals from the trial court's judgment in favor of appellee, Christine Burwell ("Burwell"), in her suit for wrongful termination. By three points of error, MCHD contends: (1) the trial court's exclusion of witnesses as a discovery sanction was harmful error, (2) the evidence is factually and legally insufficient to support the jury's finding that MCHD's personnel policy manual is an employment contract, and (3) the evidence conclusively established just cause for the termination of employment. We affirm.

### A. BACKGROUND

Christine Burwell was promoted to collections supervisor shortly after she began her employment with the Matagorda

County Hospital District in 1984. In February 1994, she was placed on probation for exhibiting poor work attitude, breaching patient confidentiality, and engaging in personal business at work. While on probation, MCHD terminated Burwell's employment because of additional policy violations.

Burwell filed suit against MCHD on December 28, 1994, for breach of employment contract and age discrimination. MCHD answered and filed a "Motion for Partial Summary Judgment," asserting that Texas's "at-will" employment doctrine precluded Burwell's breach of contract claim. The trial court granted MCHD's motion for partial summary judgment. On appeal, we reversed the summary judgment because we found that a fact question existed.[1]

In February 1999, Burwell served requests for disclosure on MCHD, in accordance with the "new" rules of civil procedure.[2] In March 1999, MCHD responded to Burwell's requests, but it did not disclose the names of four Hospital employees who had given statements in 1996.

On November 4, 1999, the trial court issued a Docket Control Order, setting the case for trial on January 10, 2000 and directing that all discovery requests and depositions be completed by November 29, 1999. The order did not set any deadlines for supplementation. On November 29, 1999, MCHD supplemented its discovery responses to Burwell's interrogatories, requests for disclosure, and requests for production. As part of its supplemental response to Burwell's request for disclosure, MCHD produced the four witness statements obtained from the Hospital employees in 1996.

On December 7, 1999, Burwell filed a "Motion for Sanctions" complaining that MCHD's supplemental discovery answers were untimely. She sought, *inter alia,* to strike the testimony or the use of any statement provided by any of these four witnesses. After hearing the motion for sanctions, the trial court refused to allow three of the four witnesses to testify. The jury subsequently returned a verdict in favor of Burwell on her breach of employment contract claim, and in favor of MCHD on Burwell's age discrimination claim. This appeal ensued.

### B. EXCLUSION OF TESTIMONY

■ By its first point of error, MCHD contends the trial court's exclusion of witnesses as a discovery sanction was harmful error. MCHD complains primarily of the exclusion of one witness, Carol Galow, who was present when Burwell allegedly violated hospital policy by criticizing the nursing staff and violating patient confidentiality.[3]

---

1. *See Burwell v. Matagorda County Hosp. Dist.,* No. 13–96–00329–CV, 1997 Tex.App. LEXIS 6136 (Tex.App.-Corpus Christi Nov. 26, 1997, pet. denied) (not designated for publication).

2. *See* Order of Approval of Revisions to the Texas Rules of Civil Procedure, Misc. Docket No. 98–9136 (Tex. Aug. 5, 1998), *printed in* 61 TEX. B.J. 752 (Sept.1998), *as amended* by Order of Final Approval of Revisions to the Texas Rules of Civil Procedure, Misc. Docket No. 98–9196 (Tex. Nov. 9, 1998), *printed in* 61 TEX. B.J. 1140 (Dec.1998), *as amended* by Order of Technical Corrections to the Revisions to the Texas Rules of Civil Procedure, Misc. Docket No. 98–9224 (Tex. Dec. 31, 1998), *printed in* 62 TEX. B.J. 115 (Feb.1999).

3. The conversation that Galow was privy to occurred during the lunch hour at the hospital cafeteria. The persons present at Burwell's table were members of hospital management and were all friends of Burwell, except Galow. The record reflects Galow would have testified that: (1) Burwell commented on the adequacy of nursing care afforded a patient who was not her relative; (2) the cafeteria was crowded that day; and

MCHD asserts the exclusion of Galow was error because its supplementation of Burwell's discovery requests naming Galow as a witness was either (1) timely under the rules, (2) the voluntary production of arguably privileged witness statements not violative of any rule or court order, or (3) did not result in any surprise to Burwell.

We review a trial court's decision to exclude testimony under an abuse of discretion standard. *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297, 298 (Tex.1986); *Durham Transp., Inc. v. Valero,* 897 S.W.2d 404, 415 (Tex.App.-Corpus Christi 1995, writ denied). To determine if there is an abuse of discretion, we must look to see if the trial court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985).

Parties have an affirmative duty to supplement answers to discovery requests, including the identification of individuals with knowledge of relevant facts or individuals designated as trial witnesses. Tex.R. Civ. P. 193.5(a)(1); *see Boothe v. Hausler,* 766 S.W.2d 788, 789 (Tex.1989). An amended or supplemental response must be made *reasonably promptly* after the party discovers the necessity for such a response. Tex.R. Civ. P. 193.5(b) (emphasis added).

When a party fails to make, amend, or supplement a discovery response in a timely manner, sanctions are appropriate. Tex.R. Civ. P. 193.6(a). The exclusion of the evidence is the sole remedy for not timely supplementing discovery. *See Alvarado v. Farah Mfg. Co.,* 830 S.W.2d 911, 914 (Tex.1992). The remedy is mandatory and automatic. *See id.* An exception to the rule exists when the court finds there was good cause for the failure to amend or supplement, or the failure will

not unfairly surprise or prejudice the other party. Tex.R. Civ. P. 193.6(a); *Morrow,* 714 S.W.2d at 297–98.

Here, Burwell served MCHD with her requests for disclosure in February 1999. MCHD responded to the requests in March of 1999. MCHD did not supplement its response and identify Galow as a trial witness until November 29, 1999, some nine months after the initial request. Accordingly, we conclude the trial court was within its discretion in determining that MCHD, by waiting nine months, did not supplement its response "reasonably promptly." *Ersek v. Davis & Davis, P.C.,* 69 S.W.3d 268, 271 n. 2 (Tex.App.-Austin 2002, pet. denied).

MCHD contends that it timely supplemented its response under the discovery rules, because supplementation made more than thirty days before trial is not a proper basis upon which to exclude testimony. In support of its contention, appellant cites Texas Rule of Civil Procedure 193.5(b), which states: "it is presumed that an amended or supplemental response made less than 30 days before trial was not made reasonably promptly." Tex.R. Civ. P. 193.5(b). Essentially, appellant argues that the reverse presumption applies, *i.e.,* that supplementation made more than thirty days before trial is reasonably promptly. We disagree. Had such a presumption been intended, we conclude it would have been expressly incorporated into the rules. *Snider v. Stanley,* 44 S.W.3d 713, 715 (Tex. App.-Beaumont 2001, pet. denied).

MCHD also contends that the four witness statements it obtained in 1996 were arguably privileged information, and as such, the voluntary disclosure of such information does not violate any rule or

(3) Burwell spoke loud enough for others to hear her criticism of the nursing staff.

court order.[4] As we noted above, the events in this case occurred in 1994. At that time, the former rules of discovery were still in effect. Under those rules, witness statements[5] and party communications[6] were protected from disclosure by privilege. *See* former Tex.R. Civ. P. 166b(3)(c), (d) (Vernon 1998, repealed by orders of Aug. 5, 1998, and Nov. 9, 1998, eff. Jan. 1, 1999). However, under the "new" rules of discovery, effective January 1, 1999, certain information or documents are discoverable, even if prepared in anticipation of litigation. Tex.R. Civ. P. 192.5(c). These include "information discoverable under Rule 192.3 concerning witness statements." Tex.R. Civ. P. 192.5(c)(1). The statements withheld by MCHD fall within the description of witness statements that are not protected by the work product privilege. *See Spohn Hosp. v. Mayer,* 72 S.W.3d 52, 62 (Tex. App.-Corpus Christi 2001, pet. filed); *In re Jimenez,* 4 S.W.3d 894, 896 (Tex.App.-Houston [1st Dist.] 1999, orig. proceeding) (witness statements are not "work product" and are generally not protected from discovery). Thus, on January 1, 1999, these four witness statements became discoverable and made subject to Burwell's requests for disclosure. *See* Tex.R. Civ. P. 194.2(i). Accordingly, MCHD had an affirmative duty to supplement its disclosures reasonably promptly after it discovered the necessity for such a response. *See* Tex.R. Civ. P. 193.5(b); *Ersek,* 69 S.W.3d at 271 n. 2.

■ MCHD further contends that its failure to timely supplement Burwell's requests for disclosure did not unfairly surprise or prejudice Burwell because she knew of Galow's existence as a potential trial witness. The burden of establishing the lack of unfair surprise is on the party seeking to introduce the evidence or call the witness. Tex.R. Civ. P. 193.6(b); *Dolenz v. State Bar of Tex.,* 72 S.W.3d 385, 387 (Tex.App.-Dallas 2001, no pet.). A finding of the lack of unfair surprise must be supported by the record. Tex.R. Civ. P. 193.6(b); *Dolenz,* 72 S.W.3d at 387.

MCHD contends that since Burwell knew Galow was present at the cafeteria table when she began to discuss the patient's care, Burwell knew that Galow was a potential witness. Further, it asserts Burwell knew that Galow was a potential witness because the hospital's business office manager referred to Galow in a deposition. We find this argument unpersuasive.

■ Burwell was entitled to rely on MCHD's failure to disclose Galow as a potential trial witness, and prepare her

4. We note that MCHD failed to preserve its claim of privilege under Texas Rule of Civil Procedure 193.3(a), by failing to state in its response, or in an amended or supplemental response, that it was withholding information based on privilege. *See* Tex.R. Civ. P. 193.3(a); *In re Monsanto Co.,* 998 S.W.2d 917, 925 (Tex.App.-Waco 1999, orig. proceeding).

5. Witness statements under former rule 166b(3)(c) were the written statements of potential witnesses and parties, when made subsequent to the occurrence or transaction upon which the suit is based and in connection with or in anticipation of the prosecution or defense of the particular suit. Former Tex.R.

Civ. P. 166b(3)(c) (Vernon 1998, repealed by orders of Aug. 5, 1998, and Nov. 9, 1998, eff. Jan. 1, 1999).

6. Party communications under former rule 166b(3)(d) included communications between a party and that party's agents, representatives, or employees when made subsequent to the occurrence or transaction upon which the suit is based and in connection with or in anticipation of the prosecution or defense of the particular suit. Former Tex.R. Civ. P. 166b(3)(d) (Vernon 1998, repealed by orders of Aug. 5, 1998, and Nov. 9, 1998, eff. Jan. 1, 1999).

case accordingly. A party is entitled to prepare for trial assured that a witness will not be called because opposing counsel has not identified him or her in response to a proper discovery request. *Alvarado,* 830 S.W.2d at 915. A party should not have to anticipate the disclosure of a material witness merely because his or her testimony would be vital to the case. *See Snider,* 44 S.W.3d at 717. The discovery rules were revised to make that sort of anticipation unnecessary. *Id.*

Accordingly, we hold the trial court did not abuse its discretion in excluding Galow's testimony. MCHD's first point of error is overruled.

### C. LAW OF THE CASE DOCTRINE

 This is the second time this case has been before this Court. A previous appeal was taken from a summary judgment granted in favor of MCHD. There, we held that "[b]ecause there is a fact question regarding whether the Manual contains explicit and specific language which modifies the employment at-will relationship, the Hospital failed to establish its entitlement to summary judgment on Burwell's breach of contract claim as a matter of law." [7] Now, on appeal after remand and trial on the merits, Burwell invokes "the law of the case" doctrine. Therefore, we must examine the extent to which our prior opinion controls the disposition of this issue.

 Under the law of the case doctrine, the initial determinations of questions of law decided on appeal to a court of last resort are held to govern throughout the subsequent stages of the case. *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986); *Trevino v. Turcotte,* 564 S.W.2d 682, 685 (Tex.1978); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. John*

*Zink Co.,* 972 S.W.2d 839, 845 (Tex.App.-Corpus Christi 1998, pet. denied). The doctrine operates to narrow the issues in subsequent stages of litigation and is supported by policy goals of uniformity of decisions and judicial economy. *Hudson,* 711 S.W.2d at 630. The doctrine does not necessarily apply if either the issues or the facts are not substantially the same in the subsequent trial. *Id.* The application of the doctrine is left to the discretion of the reviewing court. *Trevino,* 564 S.W.2d at 687.

We recognize that the law of the case doctrine has limited application following a summary judgment appeal. *See Hudson,* 711 S.W.2d at 630–31. "Where there has been a reversal of a summary judgment in favor of a defendant and then a trial on the merits with an appeal, the law as stated in the summary judgment [appeal] does not necessarily control the case on the appeal from the trial on the merits." *Med Ctr. Bank v. Fleetwood,* 854 S.W.2d 278, 283 (Tex.App.-Austin 1993, writ denied) (quoting *Allstate Ins. Co. v. Smith,* 471 S.W.2d 620, 623 (Tex.App.-El Paso 1971, no writ)).

Although our review of the summary judgment encompassed similar facts, the issue in this appeal presents an entirely different question. On the motion for summary judgment, the burden was on MCHD to show that no fact issue existed. At the subsequent trial on the merits, the burden was on Burwell to establish a valid employment contract, thus modifying the at-will employment relationship. The fact that MCHD failed to summarily negate the existence of a fact question regarding any modification of the at-will employment relationship has no bearing on the question of whether Burwell had presented sufficient evidence of the existence of a written employment contract as a part of her case

---

7. *See Burwell,* 1997 Tex.App. LEXIS 6136, at *8.

at the trial. MCHD's failure in the first instance does not operate to establish that Burwell has successfully met her burden. *See Fleetwood,* 854 S.W.2d at 284; *Abalos v. Oil Dev. Co. of Tex.,* 526 S.W.2d 604, 607–08 (Tex.Civ.App.-Amarillo 1975), *aff'd,* 544 S.W.2d 627 (Tex.1976).

Accordingly, we conclude the first appeal did not establish the law of the case on the issue of any modification of the at-will employment relationship. Therefore, we will review MCHD's second and third points of error.

### D. FINDING THAT MCHD's PERSONNEL POLICY MANUAL IS AN EMPLOYMENT CONTRACT

By its second point of error, MCHD contends the evidence is legally and factually insufficient to support the jury's finding that MCHD's personnel policy manual is an employment contract.

#### 1. *Standard of Review*

When a party without the burden of proof complains on appeal of a jury finding, the appropriate points of error are that there is "no evidence" or "insufficient evidence" to support the jury finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983).

##### a. Legal Sufficiency of the Evidence

When we review a "no evidence" point of error, we must view the evidence in a light that tends to support the finding of the disputed fact and disregard all evidence and inferences to the contrary. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001). A no evidence issue will be sustained when the record discloses that: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997). If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is not more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Havner,* 953 S.W.2d at 711.

##### b. Factual Sufficiency of the Evidence

When we review an "insufficient evidence" point of error, we consider, weigh and examine all of the evidence which supports or undermines the jury's finding. *Plas–Tex, Inc. v. United States Steel Corp.,* 772 S.W.2d 442, 445 (Tex. 1989). We review the evidence, keeping in mind that it is the jury's role, not ours, to judge the credibility of the evidence, to assign the weight to be given to testimony, and to resolve inconsistencies within or conflicts among the witnesses' testimony. *Corpus Christi Area Teachers Credit Union v. Hernandez,* 814 S.W.2d 195, 197 (Tex.App.-San Antonio 1991, no writ). We then set aside the verdict only when we find that the evidence standing alone is too weak to support the finding or that the finding is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

### 2. Employment at-Will

It has long been the law in the State of Texas that, absent a specific agreement to the contrary, the employment relationship is one of "at-will employment," whereby either party may terminate the relationship at any time, for any reason, or without any reason at all. *Fed. Express Corp. v. Dutschmann,* 846 S.W.2d 282, 283 (Tex.1993); *Schroeder v. Tex. Iron Works,* 813 S.W.2d 483, 489 (Tex. 1991); *East Line & R. R.R. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99, 102 (1888). A discharged employee who asserts that the parties have contractually agreed to limit the employer's right to terminate the employee has the burden of proving an express agreement or written representation to that effect. *Rios v. Tex. Commerce Bancshares, Inc.,* 930 S.W.2d 809, 814–15 (Tex.App.-Corpus Christi 1996, writ denied). For such an agreement to exist, the employer must unequivocally indicate a definite intent to be bound not to terminate the employee, except under clearly specified circumstances. *Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501, 502 (Tex.1998). To rebut the presumption of employment at-will, an employment contract must directly limit in a "meaningful and special way" the employer's right to terminate the employee without cause. *Rios,* 930 S.W.2d at 815. However, statements of employment policy that are not accompanied by an express agreement dealing with procedures for the discharge of employees do not create contractual rights regarding those procedures. *Salazar v. Amigos Del Valle, Inc.,* 754 S.W.2d 410, 413 (Tex.App.-Corpus Christi 1988, no writ).

### 3. Analysis

At trial, the relevant testimony centered on section 18 of MCHD's personnel policy manual, dealing with termination of employees. Section 18 provides, in relevant part:

18. Termination

Employment at the Hospital is by mutual arrangement and may be terminated by either the employee or the employer. All employee records will indicate the nature of termination which will be one of the following:

\* \* \* \* \* \*

e. Dismissal—Employees may be dismissed for cause such as insubordination, serious misconduct, or for inability to perform the duties of their job satisfactorily. Department Heads and Supervisors may place an employee on suspension but all dismissal action must be reviewed by the Personnel Officer and approved by the Administrator before action will be taken. Dismissal will be classified as follows:

(1). Dismissal with Notice—Employees judged incapable of performing the duties of their job satisfactorily and have worked beyond the probationary period will receive two weeks notice or two weeks pay in lieu of notice, at the discretion of the Department Head.

(2). Dismissal without Notice—Serious violations of policy. Employee will receive no terminal benefits.

In our previous opinion, we concluded the terms of the manual were internally conflicting. *See Burwell v. Matagorda County Hosp. Dist.,* No. 13–96–00329–CV, 1997 Tex.App. LEXIS 6136, at \*6 (Tex. App.-Corpus Christi Nov. 26, 1997, pet. denied) (not designated for publication). MCHD now contends that the manual does not establish contractual rights. However, the manual clearly provides that employees may only be terminated for the inabili-

ty to satisfactorily perform their job or for serious violations of hospital policy. The manual also requires that all terminations state one of the following reasons for termination: (1) resignation, (2) quitting, (3) layoff, (4) dismissal, (5) termination during probationary period, or (6) retirement. Further, various managers of MCHD, including the business office manager and the district chief financial officer, who were both involved in the decision to terminate Burwell, testified they believed the personnel policy manual provided they could only terminate an employee for cause. Also, Burwell, as a supervisor, believed she could terminate a subordinate employee only for cause.

We conclude this internally conflicting language in the personnel policy manual, together with the testimony of MCHD's managers concerning its meaning, is some evidence that would enable reasonable people to differ in their conclusions as to whether a contract between Burwell and MCHD existed and whether the employer's right to terminate an employee without cause was limited in a meaningful and special way. Further, we conclude that the evidence standing alone is not too weak to support the jury's finding and that the jury's finding is not so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong.

Accordingly, we hold the evidence is legally and factually sufficient to support the jury's finding that a contract for employment existed between Burwell and MCHD. MCHD's second point of error is overruled.

### E. Finding that MCHD was Not Excused from Compliance with Employment Manual

By its third point of error, MCHD contends the evidence is legally and factually insufficient to support the jury's finding that MCHD was not excused from compliance with the manual. MCHD asserts the evidence conclusively established just cause for Burwell's termination of employment, and thus, legal excuse to any breach of employment contract claim was proven as a matter of law.

### 1. *Standard of Review*

When a party with the burden of proof complains on appeal from an adverse jury finding, the appropriate points of error are "that the matter was established as a matter of law" or "that the jury's finding was against the great weight and preponderance of the evidence." *Croucher*, 660 S.W.2d at 58.

### a. Legal Sufficiency of the Evidence

When we review a point of error "that the matter was established as a matter of law," we examine the record for evidence supporting the finding of fact and ignore all evidence to the contrary. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989); *Hickey v. Couchman*, 797 S.W.2d 103, 109 (Tex.App.-Corpus Christi 1990, writ denied). If we find that no evidence supports the finding, we must determine from the record whether the contrary proposition is established as a matter of law. *Sterner*, 767 S.W.2d at 690; *Hickey*, 797 S.W.2d at 109.

### b. Factual Sufficiency of the Evidence

When we review a point of error "that the jury's finding was against the great weight and preponderance of the evidence," we examine the entire record. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Hickey*, 797 S.W.2d at 110. We set aside the verdict only if it is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain*, 709 S.W.2d at 176; *Hickey*, 797 S.W.2d at 110.

## 2. *Analysis*

██ MCHD's employee manual includes breach of confidentiality of patient information and/or treatment as actions which may result in immediate disciplinary action or discharge. The manual describes confidential information as "information pertaining to the personnel or medical staff of the hospital or to the patient." MCHD asserts that Burwell breached patient confidentiality by "discussing patients and their care in the hospital cafeteria (an open setting) loudly and non-professionally."

Burwell testified that during the conversation in question, she asked Carol Galow whether the district employed nurses' assistants over the weekends. After Galow asked why, Burwell explained that while she was visiting her aunt, who was a patient at the hospital with a broken hip, she noticed that her aunt's morning care had not been given, she had not been given a bath, and she had not been fed. Also, her aunt's roommate, in the next bed, was vomiting off the side of her bed. When she went to the nurse's station to get assistance, a nurse told her they were very busy and for Burwell to do what she could. After taking the roommate a basin, Burwell returned to the nurses' station, seeking a washcloth. A nurse directed her to where the linens were kept.

Present during the conversation in question were Burwell, Carol Galow (discharge planning nurse), Mary Helen Nelson (district director of education and coordinator of the district customer service program), Brenda King (assistant administrator of the district nursing home), and Eileen Jean (patient accounts supervisor). These persons were all supervisors or members of management. Mary Helen Nelson, Brenda King and Eileen Jean all testified that based on their experience working in the health care industry, Burwell had not breached any patient confidentiality. They testified that Burwell never used patients' names, instead, referred to them as "my aunt" or "the roommate." They all agreed that Burwell was not attacking MCHD personnel, but instead, was making statements out of concern for the patients.

We conclude there is sufficient evidence to support the jury's finding that MCHD was not excused from compliance with the employee manual. Further, we conclude the jury's finding is not so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust.

Accordingly, we hold the evidence is legally and factually sufficient to support the jury's finding that MCHD was not excused from compliance with the terms of the employee manual. MCHD's third point of error is overruled.

The judgment of the trial court is affirmed.

Dissenting Opinion by Justice
ERRLINDA CASTILLO.

Opinion by Justice CASTILLO.

I respectfully dissent. I would hold that the evidence was insufficient to support the jury's finding that a contract for employment existed and reverse the judgment.

## OPINION ON MOTION FOR REHEARING

Opinion by Justice HINOJOSA.

██ Appellant, Matagorda County Hospital District ("MCHD"), has filed a motion for rehearing asserting "this Court wholly failed to address a properly preserved point of error/issue raised by the Hospital District" regarding the revocability of the employment manual. MCHD does not explain why it contends the revo-

cability issue was "properly preserved."[1] Nevertheless, because MCHD complained on appeal that the evidence was legally and factually insufficient, we will address the revocability issue as part of MCHD's sufficiency complaint.

MCHD asserts the evidence conclusively established that its employment manual was unilaterally revocable at will. MCHD's district administrator testified that MCHD could revise its employment manual without the employees' consent.

MCHD contends this Court's opinion in *Reynolds Mfg. Co. v. Mendoza*, 644 S.W.2d 536 (Tex.App.-Corpus Christi 1982, no writ), stands for the proposition that where there is no express agreement limiting the employer's right to unilaterally amend or withdraw the personnel manual, no modification of the at-will employment doctrine will be found. *See also Williams v. Wal-Mart Stores, Inc.*, 882 F.Supp. 612, 616 (S.D.Tex.1995); *Brown v. City of Galveston*, 870 F.Supp. 155, 160 (S.D.Tex.1994) (citing *Reynolds Mfg. Co.*, 644 S.W.2d at 539). We conclude the *Reynolds* case is factually distinguishable from the instant case.

In *Reynolds*, we reversed jury findings in favor of a discharged employee because, "there is no evidence of any express agreement which dealt with procedures for discharge of employees, unless the employee handbooks can be read as such." *Reynolds Mfg. Co.*, 644 S.W.2d at 539. We reviewed and analyzed the express terms of Reynolds's employee handbook. In conducting that analysis, we distinguished cases involving employee manuals containing express procedures for employee discharge. *See id.* (citing *Mansell v. Tex. & Pac. Ry. Co.*, 135 Tex. 31, 137 S.W.2d 997, 999–1000 (1940); *Hardison v. A.H. Belo*

*Corp.*, 247 S.W.2d 167, 168 (Tex.Civ.App.-Dallas 1951, no writ)).

The remaining cases cited by MCHD in the motion for rehearing also distinguish cases involving employee manuals which limit the employer's right to terminate an employee, *see Brown v. City of Galveston*, 870 F.Supp. 155, 159–60 & n. 3 (S.D.Tex. 1994), or are factually distinguishable, *see Werden v. Nueces County Hosp. Dist.*, 28 S.W.3d 649, 651 (Tex.App.-Corpus Christi 2000, no pet.) (handbook expressly providing that it is not a contract, can be changed at any time, and that employment is at-will); *Gamble v. Gregg County*, 932 S.W.2d 253, 255 (Tex.App.-Texarkana 1996, no writ) (manual expressly providing that county may unilaterally change).

In the instant case the evidence includes the internally conflicting language of MCHD's employee manual which expressly limits MCHD's right to terminate an employee. The record also includes the testimony of MCHD's business office manager and chief financial officer. Both of these individuals were involved in the decision to terminate Burwell, and both testified that the personnel manual provided they could only terminate a subordinate employee for cause.

■■■■■ To rebut the presumption of employment at-will, an employment contract must directly limit in a "meaningful and special way" the employer's right to terminate the employee without cause. *Rios v. Tex.-Commerce Bancshares, Inc.*, 930 S.W.2d 809, 815 (Tex.App.-Corpus Christi 1996, writ denied). An employer's statements concerning termination rights in employment literature may modify the at-will relationship if the statements specifically and expressly curtail the employ-

---

1. The revocability issue was not raised in MCHD's original motion for summary judgment, in its motion for new trial, or in a motion for judgment notwithstanding the verdict.

er's right to terminate the employee. *Vida v. El Paso Employees' Fed. Credit Union*, 885 S.W.2d 177, 181 (Tex.App.-El Paso 1994, no writ); *McAlister v. Medina Elec. Coop., Inc.*, 830 S.W.2d 659, 664 (Tex. App.-San Antonio 1992, writ denied).

We hold the evidence is legally and factually sufficient to support the jury's finding that a contract for employment existed between Burwell and MCHD. We deny MCHD's motion for rehearing.

Justice CASTILLO is dissenting.

Justice CASTILLO, dissenting on motion for rehearing.

I respectfully dissent. The majority departs, without explanation, from our own precedent. *See Reynolds Mfg. Co. v. Mendoza*, 644 S.W.2d 536 (Tex.App.-Corpus Christi 1982, no writ). I would hold that the evidence was insufficient as a matter of law to support the jury's finding of the existence of an employment contract between appellant Matagorda County Hospital District and appellee Christine Burwell. I would grant MCHD's motion for rehearing, reverse the judgment, and render a take-nothing judgment against Burwell.

### THE UNILATERAL–REVOCATION RULE

Our complete holding in *Reynolds* was this:

[T]here is no evidence of any express agreement which dealt with procedures for discharge of employees, unless the employee handbooks can be read as such. We do not believe that they can be so read. *Reynolds was in no way prevented from unilaterally amending or even totally withdrawing its handbook.* In fact, the original handbook was amended once during Mendoza's employment. We believe that the handbooks constituted no more than general guidelines.

*Reynolds*, 644 S.W.2d at 539 (emphasis added). Here, the undisputed evidence at trial proved that MCHD retained the right to unilaterally revoke its Personnel Policy Manual. This single fact is not only dispositive but also indistinguishable from the facts in *Reynolds*.

For compelling reasons, on occasion we do overrule earlier decisions. I dissent here because the unilateral-revocation rule we articulated in *Reynolds* is ensconced firmly in Texas jurisprudence. In the twenty years since we handed down that decision, *Reynolds'* progeny in case after case have followed our unambiguous holding: when an employer retains the right to revoke or amend an employee manual, termination procedures outlined in the manual do not alter the employees' at-will status. *Id.*[1] The majority disregards our own

1. *See, e.g., Stephens v. Dallas Area Rapid Transit*, 50 S.W.3d 621, 635 (Tex.App.-Dallas 2001, pet. denied) (supp. op. on mot. for reh'g); *Mott v. Montgomery County*, 882 S.W.2d 635, 638–39 (Tex.App.-Beaumont 1994, writ denied); *Alcorn v. Vaksman*, 877 S.W.2d 390, 422 (Tex.App.-Houston [1st Dist.] 1994, writ denied); *Day & Zimmermann, Inc. v. Hatridge*, 831 S.W.2d 65, 69–70 (Tex.App.-Texarkana 1992, writ denied); *Ryan v. Superior Oil Co.*, 813 S.W.2d 594, 596 (Tex.App.-Houston [14th Dist.] 1991, writ denied); *Hicks v. Baylor Univ. Med. Ctr.*, 789 S.W.2d 299, 302 (Tex.App.-Dallas 1990, writ denied);

*Berry v. Doctor's Health Facilities*, 715 S.W.2d 60, 61 (Tex.App.-Dallas 1986, no writ). I find only one exception in Texas to a straightforward application of the unilateral-revocation rule. *United Transp. Union v. Brown*, 694 S.W.2d 630, 633 (Tex.App.-Texarkana 1985, writ ref'd n.r.e.). *Brown* is distinguishable in that the jury found that the employer on hiring had expressly promised the employee, who resigned at the employer's request from a union that guaranteed certain employment conditions, that she would not lose any job protection rights.

precedent as well as a basic tenet of Texas employment law.

Federal courts also have followed *Reynolds*.[2] The Fifth Circuit cited our opinion in analyzing the effect in Texas of employee manuals on at-will status: "Texas law 'general[ly] reject[s] the claim that employment manuals issued *unilaterally* by an employer can per se constitute written employment contracts and create specific limitations which take the cases out of the at-will doctrine.'" *Zimmerman v. H.E. Butt Grocery Co.*, 932 F.2d 469, 471 (5th Cir.1991) (emphasis added) (quoting *Aiello v. United Air Lines, Inc.*, 818 F.2d 1196, 1198 (5th Cir.1987)).

Nonetheless, the majority focuses on two facts: (1) MCHD's Personnel Policy Manual details procedures for employee discharge;[3] and (2) MCHD's representatives testified they believed they only could terminate an employee for cause. As to the first circumstance, the unilateral revocability of MCHD's Personnel Policy Manual renders any limitation contained in the manual on MCHD's right to terminate an employee of no legal consequence. *Reynolds*, 644 S.W.2d at 539. Thus, I do not find that evidence of detailed termination procedures in the manual supports the jury's verdict in this case. As to the second circumstance, the subjective belief of an employer's managers in the necessity of compliance with termination procedures in an employee handbook does not create an exception to the at-will doctrine. *Zimmerman*, 932 F.2d at 472. Thus, I also do not find relevant, or dispositive, the testimony of Burwell and other MCHD managers that they understood that an MCHD employee could be terminated only for cause. *Id.* Finally, MCHD's Personnel Policy Manual not only specified grounds supporting termination for cause but also inconsistently provided that "[e]mployment at the Hospital is by mutual arrangement and may be terminated by either the employee or the employer." Accordingly, I would hold that evidence of the unilateral revocability of MCHD's Personnel Policy Manual conclusively established as a matter of law the opposite of Burwell's claim of a binding employment contract. *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997).

## CONCLUSION

We follow precedent for reasons of efficiency, fairness, and legitimacy. Strong policies[4] support our practice of adhering to settled rules of law "unless there exists the strongest reasons for chang[e]." *Benavides v. Garcia*, 290 S.W. 739, 740–41 (Tex. Comm'n App.1927, judgm't adopted). My dissent should not be read to condemn reasoned evolution when continued application of a judicially created rule of law no longer furthers the interests it once served and "the general interest will suffer less by such departure, than from a strict adherence." *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 215 (Tex.2001) (quoting *Benavides*, 290 S.W. at 740). In that event, we should not hesitate to revisit a prior holding.

---

**2.** *See, e.g., Glagola v. N. Tex. Mun. Water Dist.*, 705 F.Supp. 1220, 1222 (E.D.Tex.1989).

**3.** The majority concludes that we distinguished in *Reynolds* cases involving employee manuals containing express procedures for employee discharge. However, the facts in *Reynolds* included just such a manual.

**4.** We should give due consideration to the settled expectations of litigants who justifiably rely on the principles articulated in our precedents. *See Quill Corp. v. N. Dakota*, 504 U.S. 298, 321, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992) (Scalia, J., concurring) ("[R]eliance on a square, unabandoned holding of the Supreme Court is always justifiable reliance. . . .").

The majority does not give a reason for our departure today from *Reynolds*, and with that I also disagree. The majority should announce a repudiation of *Reynolds* so that employers, particularly publicly funded entities like MCHD, know they may rely no longer on the unilateral-revocation rule as a bulwark against breach-of-contract claims by terminated employees.